TYSSOWSKI v. THAYER et al.

(Circuit Court of Appeals, Seventh Circuit. October 5, 1909.)

No. 1,528.

PATENTS (§ 328*)—INVENTION—PYROGRAPHIC TOOL.

The Tyssowski patent, No. 727,034, for a pyrographic tool "comprising a combined pyrographic point and a scorcher," is void for lack of invention.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

Suit in equity by Joseph G. Tyssowski against Henry J. Thayer and Charles H. Chandler. Decree for defendants and complainant appeals. Affirmed.

For opinion below, see 159 Fed. 165.

Joseph G. Tyssowski, in pro per.
Charles A. Brown, for appellees.

Before GROSSCUP and BAKER, Circuit Judges, and ANDERSON, District Judge.

ANDERSON, District Judge. This is an appeal from a decree of the Circuit Court dismissing the bill for want of equity in a suit on United States letters patent No. 727,034 granted May 5, 1903, to Zell Niver Tyssowski for an alleged improvement in tools for pyrographic work. The pyrographic tool is an old and well-known device, and the

alleged improvement set forth in the patent relates simply to the small nozzle which is put upon the tool for use in scorching. The patentee in the specifications of the patent recites:

"My invention relates to improvements in tools for pyrographic work in which a hollow platinum point is maintained at a continuous red heat by the combustion of a current of 'carbureted' air, by which I mean air carrying hydrogen or any hydrocarbon, which is made to pass through the instrument."

And again:

"I am aware that scorching devices and burning tools are separately old, and I do not claim the mere combination of these two; but what I do claim, broadly, is a device for the utilization of the heated gases from the one for the operation of the other, all combined in a single tool."

The only claim alleged to be infringed is claim 3, which is as follows:

"3. A tool for pyrographic work, comprising a combined pyrographic point and a scorcher, said pyrographic point consisting of a hollow pointed instrument adapted to be brought into direct contact with the material operated on, and having an interior combustion-chamber by which it may be heated to incandescence, and said scorcher consisting of a nozzle having a passageway through it of such limited cross-section as to maintain the pressure and temperature of the escaping gases, whereby a hot fine jet of escaping gases, at charring temperature, from the combustion-chamber may be projected with precision, substantially as described."

The patent is for "a tool for pyrographic work comprising a combined pyrographic point and a scorcher." The prior art shows each of these things, the "point" and the "scorcher." The point consisted of a stylus-shaped point which was heated to incandescence by maintaining within it a steady combustion of carbureted air. This point was used for etching, and was brought directly into contact with the surface of the wood. The scorcher also consisted of a stylus-shaped point, with an aperture in the apex through which the heated gases were forced and used for scorching. Each of these was used as a separate tool. The combustion of carbureted air within the point required the continuous forcing of the air into the instrument, and in order to permit of a continuous supply of air a hole was placed upon the side of the chamber of the point to allow the escape of the heated gases. Prior to the application for the patent the heated gases flowing from the little furnace within the point through the hole above mentioned were used for scorching. The patentee placed a nozzle at the hole, which was already there, and thus controlled and directed the escaping gases. In the specifications the patentee says:

"In place of the usual hole for the exit of hot gases I provide a tube or nozzle * * * with a suitable delivery orifice, * * * which projects the hot gases in a straight fine stream in such a way that they can be used for producing useful effects."

There is nothing novel in the construction of the nozzle. In the claim, No. 3, it is described as "having a passageway through it of such limited cross-section as to maintain the pressure and temperature of the escaping gases, whereby a hot fine jet * * * may be projected with precision." This is nothing more than saying that he has attached a nozzle of proper size to confine and direct the escaping gases. It is well known that, when gas escapes from the chamber in

the point through the hole into the air, it has a tendency to spread and scatter. This is not desirable in a scorcher. In the old scorching tool it was controlled by the size of the aperture in the apex of the stylus, just as the patentee controls it by a nozzle of "limited cross-section."

It was also well known that, to control and direct the escaping gases from the side of the chamber in the stylus, it was only necessary to employ a simple and well-known device—a nozzle. This the pat-entee did; but such a performance does not rise to the dignity of in-vention. The specifications of the patent acknowledge "that scorching devices and burning-tools are separately old." If the patent consists in simply bringing together into one tool these two things, it is not invention. It is mere aggregation.

But it was not new to put a nozzle upon the hole where the gases escape. Beach, whose patent, No. 615,784, was granted December 13, 1898, more than four years before the patent in suit was issued, did this same thing. He placed a nozzle upon the hole where the gases escaped from a pyrographic point, and he placed it there to control and direct the escaping gases, so as to drive away the fumes arising from the charring of the substance operated upon. His nozzle does not have the "fine issuing channel at its delivery end," nor "the issuing orifice of limited cross-section," nor is it "a nozzle having a passage-way through it of such limited cross-section as to maintain the pressure and temperature of the escaping gases"—at least it is not so described. Beach provided a nozzle to carry away, control, and direct the escaping gases. The only thing left for the patentee here was to vary the form and dimensions of the nozzle, so as to get the desired result. It does not involve invention to devise a nozzle with a channel of such shape and size as to cause the heated gases to issue in a fine jet.

The decree of the Circuit Court is affirmed.